Jacob Markowitz, J.
This is a motion by a preferred stockholder of the corporate defendant (1) for a temporary injunction restraining defendants, the corporation and its directors, from utilizing surplus profits or earnings for certain specified purposes, and (2) for summary judgment, complete or partial, for the difference between dividends at the rate of 7% per annum, on the preferred stock, for the years 1951 through 1956, *589 and the preferred stock dividends declared and paid during those years.
The application for injunctive relief is predicated on the wording of an amendment of the certificate of incorporation, in 1926, which reads: “ The purposes and powers of the corporation are hereby extended by adding to the statement thereof a further statement to read as follows: The Board of Directors may in their discretion, after the declaration of the full dividend on the preferred stock for the then calendar year, set apart or reserve from the surplus profits or net earnings of the corporation such sum or sums as may be determined by them so that the same may be used as working capital in the business of the corporation or as a reserve or surplus fund to meet liabilities or contingencies or to purchase shares of its own stock, or to purchase the stock, bonds and other obligations of other corporations, or for the purpose of creating a fund out of which the Board of Directors may from time to time in their discretion make disbursements to aid in any manner which shall be lawful any corporation or association of which any shares of capital stock, bonds, debentures, notes, securities or other evidences of indebtedness shall be owned by this corporation, or for any other purpose, not prohibited by law, which in the judgment of the Board of Directors shall be of advantage to this corporation ” (italics this court’s). Although the italicized language of the above quotation, by its terms, relates only to the creation of a “reserve” or “fund” for the purposes therein enumerated, plaintiff seeks to enjoin defendants, not merely from creating or setting apart such a reserve or fund, but also from “ utilising surplus profits or net earnings of defendant corporation, prior to the declaration of full dividends on the preferred stock, as working capital in the business of the corporation.” The notice of motion is ambiguous as to whether plaintiff seeks to enjoin the creation of a reserve for the purchase of stock of other corporations or to restrain the utilization of net profits or earnings for that purpose. It is clear, however, from the moving affidavit that plaintiff is asking to enjoin defendants from purchasing stock of other corporations from net earnings or profits, even though no attempt to create a reserve or fund for such purchases is involved.
Plaintiff maintains that the words “ set apart or reserve * * * such sums ” and “ reserve or surplus fund ”, as used in the charter amendment, above quoted, are broad enough to include any utilization of the net earnings or profits for the purposes therein referred to. Thus, plaintiff’s brief states that ‘ ‘ when surplus profits of net earnings are actually utilized for *590 the purpose of creating working capital, or the purpose of buying stock of another corporation, or the stock of defendant corporation, it is obviously being set apart for that purpose.” The absurdity of plaintiff’s attempt to interpret the amendment as applying to .any utilization of the net earnings or profits for the purposes enumerated therein may be readily demonstrated. If plaintiff’s theory were accepted as sound, any attempt of the corporation, prior to the declaration of a full 7 % preferred dividend for the year in question, to use its net earnings or profits as working capital, or to pay any of its liabilities therefrom, would violate the charter, as amended. This would mean that the dividend would have to be declared at the beginning of each year, for the declaration would have to precede the payment of corporate liabilities and the use of the net profits as working capital for the operation of the company. Since the declaration of preferred dividends may only be made from surplus earnings or profits, which cannot be determined until the end of the year for which the declaration is made, it is manifest that plaintiff’s interpretation of the amendment must be rejected not only as being contrary to its literal language but also as producing an impossible result. It is immaterial, in this respect, whether a dividend of 7% per annum is mandatory, in the event of the existence of surplus earnings available to pay it, as plaintiff contends in support of his prayer for summary judgment, or discretionary with the directors, as defendants urge.
Furthermore, the purpose of the amendment, as revealed in the corporate minutes, and the form which the amendment took indicate clearly that it was not intended to restrict the corporation from doing what it already had the power to do, under the original charter, without the condition precedent of a declaration of a full 7 % preferred dividend, but rather that the object of the amendment was to broaden the corporate powers by authorizing the creation of reserves or funds for use in aiding companies in which the corporation had a financial interest. The original certificate of incorporation expressly empowered the corporation (par. II [0]) “to manage and control, directly or through ownership of stock in any corporation,” all kinds of buildings and structures. Under paragraph II (I) the corporation was authorized “ to subscribe for, purchase, acquire, invest in, hold * * * shares of capital stock, bonds, debentures or other evidences of indebtedness of any corporation ”. Paragraph II (J) contained a similar provision. Paragraph II (L) provided that the corporation could “ do all such acts and things as are incident or conducive to *591 the premises ”. The original certificate contained no language making the exercise of the above-referred-to powers conditional upon the prior declaration of a full 7% preferred dividend for the year in which the corporation might seek to exercise such powers. It is, therefore, clear beyond peradventure that before the amendment was adopted the corporation could use net profits or earnings to pay its liabilities, as working capital, and to buy stocks and securities of other corporations, without any necessity of a prior declaration of a full 7% preferred dividend for the year involved. The minutes of the directors’ meeting of December 22, 1925 show that a resolution was adopted for the creation of a “ trust fund ”, for the purpose of enabling companies ‘ ‘ underwritten under the french flan ’ ’ to make redemption payments to their stockholders. In the discussion which preceded the adoption of the resolution, Mr. French had stated that it was planned to have the corporation and two other French companies “ each contribute approximately 5% of its net earnings to a trust fund for such a purpose ”. The minutes of the next directors’ meeting, held on January 26, 1926, refer to the resolution previously mentioned as “ creating a fund to be held by trustees The resolution adopted at the meeting of March 23, 1926 declared that: “ the creation of the so-called ‘ Insurance Fund ’ for the purpose of assisting companies underwritten under the french plan * * * was brought up for discussion. The Chairman reported that under advice of counsel it is deemed advisable that the Certificate of Incorporation be amended so as to give the company power to create such a fund ” [italics this court’s]. That the purpose of the amendment was solely to remove any doubt as to the legality of the creation of such ‘' Insurance Fund”, to which other French companies would contribu»is confirmed by the fact that the amendment, upon which tr»plaintiff relies, is entitled “ Certificate of Extension of Purposes and Powers” [italics this court’s]. If plaintiff’s interpretation were correct, the so-called “ extension” would be a limitation, for the corporation would thereby be forbidden, unless there were a prior declaration of a full 7% preferred dividend, from using net earnings as working capital, and for the purchase of stock in other companies, ivhich is one of its corporate purposes, although, prior to the amendment it could have done so without any requirement that a full 7% dividend be first declared.
The fact that the amendment expressly permits the use of the “ set apart ” reserve or “ fund ” for purposes other than and additional to the assistance of any company or association *592 in which the corporation had a financial interest may well have been due to a desire not to limit or confine the use of the newly authorized fund or reserve to the assistance of affiliated companies and to permit its use, as well, for other purposes such as the acquisition of stock of other companies, etc. Although the fund or reserve authorized by the amendment may not be employed for any of the specified purposes, unless and until a full 7% preferred dividend for the year had been declared, there is no such limitation in the amendment or in the original certificate as to the use of the corporation’s net earnings or profits which have not been placed in such a fund or reserve for future use.
In the circumstances the motion, insofar as it seeks a temporary injunction, is denied. It may not be amiss, in this connection, to point out that, apart from the foregoing, the granting of the preliminary injunction sought would entirely prevent the corporation from operating its business, whereas the denial of the request for injunctive relief would not, as far as appears, work any injury to plaintiff or other preferred stockholders. The proposed purchase of units of stock of 551 Fifth Avenue, Inc., would merely substitute such units for cash, without affecting the amount of the net surplus. There is no showing that the units are not worth the amount to be paid for them. A balancing of the equities would, therefore, in any event, require the denial of the preliminary injunction applied for.
We turn now to the demand for summary judgment. This is predicated upon plaintiff’s contention that, under the wording of the certificate of incorporation, the declaration of an annual dividend of 7% on the preferred stock is mandatory, provided that there are surplus profits or net earnings sufficient to pay it. Plaintiff claims that in each of the years involved in this action there were sufficient surplus profits or net earnings to meet a full 7% annual dividend.
An action is presently pending in this court, commenced in 1950, in which this very plaintiff seeks dividends on the preferred stock for the years 1945 through 1950. In that action, the complaint alleges that in each of said six years the surplus earnings were sufficient to pay a full 7% dividend on the 46,164 shares of preferred stock outstanding. The difference between the 42% which plaintiff claims should have been paid during the six years and the 4% which was paid (1% in 1949 and 3% in 1950) amounts to $1,754,232. There is also pending another action, consolidated with the 1950 action, in which it is alleged that the corporate earnings for 10 years, beginning in 1939, were sufficient to pay all or a major part of the preferred *593 dividends. If these two actions should succeed, the recovery may be large enough to wipe out not only the corporation’s ‘ ‘ earned surplus ” as of December 31, 1956, amounting to $1,639,282, but also its “ capital surplus ” as of that date, amounting to $666,411. A letter written by plaintiff’s attorney states that the recovery in the two earlier actions can be large enough to wipe out the corporate surplus available for payment of the dividends claimed in this action only if the trial court in these actions should find that the assets as shown on defendant’s earlier financial statements were undervalued. The letter states that ‘ ‘ if this should transpire, it would automatically increase the surplus at least commensurately ”. In the court’s opinion this does not necessarily follow. Even if an undervaluation of assets is found to have occurred in some earlier years, it may well be no such undervaluation exists at this time and that the surpluses shown in the company’s financial statements for the years involved in this action are correct. In these circumstances, a triable issue of fact is presented as to whether surpluses existed for the years upon which the present action is based. If there were no such surpluses, plaintiff would not be entitled to recover even if he were able to prevail as to his contention that the preferred dividends are mandatory. It is, accordingly, unnecessary to decide, at this time, whether plaintiff’s claim that the preferred dividends are mandatory possesses merit.
The application for summary judgment is denied.